**2021 BNH 003**

_____

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW HAMPSHIRE

In re:

Old Cold, LLC (f/k/a Tempnology, LLC),
              Debtor

Bk. No. 15-11400-CJP
Chapter 11

Mission Product Holdings, Inc.,
              Plaintiff

v.

Adv. No. 18-01026-CJP

Schleicher & Stebbins Hotels, L.L.C.,
              Defendant

*Robert J. Keach, Esq.*
*Lindsay Zahradka Milne, Esq.*
*Bernstein, Shur, Sawyer & Nelson, PA*
*Attorneys for Plaintiff*

*Christopher M. Candon, Esq.*
*Ryan P. Lirette, Esq.*
*Sheehan Phinney Bass & Green, PA*
*Attorneys for Defendant*

## MEMORANDUM OPINION AND ORDER ON
## MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT

The plaintiff, Mission Product Holdings, Inc. ("Mission"), has moved for leave to file a

first amended complaint [AP Dkt. No. 19][1] (the "Motion"), pursuant to Fed. R. Civ. P. 15(a)(2),

as made applicable to this proceeding by Fed. R. Bankr. P. 7015, to add defendants and assert

---

[1] Hereinafter, all references to the docket of Adversary Proceeding No. 18-01026 (the "Adversary Proceeding") shall be designated as "AP Dkt. No." and all references to the docket of the main bankruptcy case (Bankr. Case No. 15-11400) shall be designated as "Dkt. No."

additional claims against the existing defendant, Schleicher & Stebbins Hotels, L.L.C. ("S&S"),

the successful bidder to purchase a majority of the assets of the debtor Old Cold LLC f/k/a

Tempnology, LLC (the "Debtor" or "Tempnology"), and the proposed added defendants,

Coolcore LLC ("Coolcore"), as the alleged transferee of S&S's interests in the acquired assets or

purchase agreement, and Mark Stebbins (Coolcore and Mr. Stebbins, together, the "Proposed

Defendants").[2]  *See* Mot. ¶ 26.  S&S filed an objection [AP Dkt. No. 23] (the "Objection") to the

Motion.  Mission filed a reply [AP Dkt. No. 27] (the "Mission Reply") to the Objection. After a

hearing on the Motion, the Court directed the parties to file any additional submissions in support

of their respective positions and S&S filed a supplemental brief [AP Dkt. No. 45] (the "S&S

Reply Brief").  Upon consideration of the arguments of counsel at the hearing, the Motion, the

Objection, the supplemental responses and briefing, and the record of this proceeding and the

Debtor's bankruptcy case, the Court DENIES the Motion for the reasons stated below.

## I.   **BACKGROUND**[3]

On November 21, 2012, Tempnology and Mission entered into a Co-Marketing and

Distribution Agreement (the "Agreement"), which provided Mission exclusive rights to

---

[2] In a separate motion brought under Fed. R. Civ. P.  25(c) [AP Dkt. No. 28] (the "Joinder Motion"),
Mission seeks to join Coolcore as the transferee of some or all of interests of S&S in the acquired assets
of the Debtor.  *See* Joinder Mot. ¶¶ 8–9; Mot. ¶ 26.  The Court will address the Joinder Motion in a
separate order.  Recently, S&S provided notice that Mr. Stebbins had died.  S&S's Statement Noting
Death of Mark Stebbins ¶ 3, A.P. Dkt. No. 46. Mission has filed a motion to substitute the executor of Mr.
Stebbin's estate for Mr. Stebbins pursuant to Fed. R. Civ. P.  25(a) [AP Dkt. No. 47] (the "Substitution
Motion"). The Substitution Motion will also be the subject of a separate order.

[3] The extensive background and travel of the Debtor's bankruptcy case and the disputes giving rise to this
Adversary Proceeding have been recited in various published opinions.  *See, e.g., Mission Prod.
Holdings, Inc. v. Tempnology, LLC,* 139 S. Ct. 1652, 1658–1660 (2019); *Mission Prod. Holdings, Inc. v.
Tempnology, LLC (In re Tempnology, LLC),* 879 F.3d 389, 392–95 (1st Cir. 2018); *Mission Prod.
Holdings, Inc. v. Tempnology LLC (In re Tempnology LLC),* 559 B.R. 809, 811–15 (B.A.P. 1st Cir.
2016). However, certain facts directly relevant to determination of the Motion are summarized herein.

distribute certain "Coolcore"-branded products in the United States (the "Exclusive Distribution Rights") and granted Mission a non-exclusive license to use the "Coolcore" trademarks and related intellectual property (the "Trademarks") in the United States and worldwide.

## A.     The Chapter 11 Case

Tempnology filed its voluntary Chapter 11 petition on September 1, 2015 (the "Petition Date").  The next day, the Debtor filed a motion to establish procedures for the sale of substantially all of its assets free and clear of liens, claims, and interests [Dkt. No. 34] (the "Sale Motion") and an Omnibus Motion to Reject Executory Contracts Nunc Pro Tunc to the Petition Date [Dkt. No. 35] (the "Rejection Motion").  Mission filed a combined objection to the Sale Motion, the Rejection Motion, and the Debtor's request for debtor-in-possession financing [Dkt. No. 99] (the "Sale/Rejection Objection"), in which Mission objected to any sale free and clear of what it asserted to be its intellectual property rights or rights arising under the Agreement and explicitly elected to retain its intellectual property rights under the Agreement pursuant to 11 U.S.C. § 365(n)(1)(B)[4] (the "§ 365(n) Election").  The Court (Deasy, J.) entered an order granting the Rejection Motion, approving the rejection of the Agreement as of the Petition Date "subject to Mission Product Holdings' election to preserve its rights under 11 U.S.C. § 365(n)." Ord. Granting Rejection Mot., Dkt. No. 188.  On October 15, 2015, the Debtor filed a motion requesting determination of the applicability and scope of Mission's § 365(n) Election [Dkt. No. 211] (the "Motion to Clarify"), asserting that Mission's § 365(n) Election preserved only Mission's non-exclusive intellectual property license of the Trademarks under the Agreement and did not preserve Mission's Exclusive Distribution Rights to distribute the "Coolcore"-branded products.  Mission objected to the Motion to Clarify [Dkt. No. 231] (the "Clarification

---

[4] Unless otherwise noted, all section references herein are to Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, as amended (the "Bankruptcy Code").

Objection").  On November 3, 2015, the Bankruptcy Court issued preliminary oral rulings at the hearing on the Motion to Clarify to permit parties to consider those rulings in advance of the auction scheduled for November 5, 2015 (the "Auction").  The Court stated on the record that its preliminary conclusions were that Mission's § 365(n) Election did not protect the Trademark license or the Exclusive Distribution Rights.  *See* Mot. to Clarify Hr'g Tr. 65:5–67:14, Dkt. No. 455.

On November 5, 2015, the Debtor conducted the Auction as contemplated by the bid procedures order [Dkt. No. 194] (the "Bid Procedures Order"). The Debtor ultimately declared a bid submitted by S&S as the highest and best bid.  *See* Debtor's Notice of Successful Bidder, Dkt. No. 235.  Mission subsequently filed an amended objection to the Sale Motion, challenging the conduct of the Auction [Dkt. No 246] (the "Amended Sale Objection").

On November 12, 2015, the Court issued a Memorandum Opinion regarding the Debtor's Motion to Clarify [Dkt. No. 239] (the "365(n) Opinion")[5] and a separate order granting the Motion to Clarify [Dkt. No. 240] (the "365(n) Order"), ordering in pertinent part as follows:

> [Mission's] election pursuant to 11 U.S.C. § 365(n) provides Mission rights as a non-exclusive licensee only as to any patents, trade secrets, and copyrights as are granted to Mission in section 15(b) of the Agreement.
>
> Mission's election pursuant to 11 U.S.C. § 365(n) provides no protectable interest in the Debtor's trademarks or trade names.
>
> Mission's election pursuant to 11 U.S.C. § 365(n) provides no protectable interest in the Debtor's "Exclusive Products" and the "Exclusive Territory" as those terms are defined in the Agreement.

---

[5] *In re Tempnology, LLC*, 541 B.R. 1 (Bankr. D.N.H. 2015), *aff'd in part, rev'd in part sub nom. Mission Prod. Holdings, Inc. v. Tempnology LLC (In re Tempnology LLC)*, 559 B.R. 809 (B.A.P. 1st Cir. 2016), *aff'd in part, rev'd in part sub nom. Mission Prod. Holdings, Inc. v. Tempnology, LLC (In re Tempnology, LLC)*, 879 F.3d 389 (1st Cir. 2018), *rev'd and remanded sub nom. Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652 (2019).

365(n) Ord. ¶¶ 2–4, Dkt. No. 240. Mission appealed the 365(n) Opinion and 365(n)

Order.  *See* Notice of Appeal, Dkt. No. 242.

On December 18, 2015, the Bankruptcy Court approved the sale of substantially all the

Debtor's assets to S&S or its assignee, notwithstanding Mission's objections.  *See* Mem. Op. 1,

Dkt. No. 306 (the "Sale Opinion"); Ord. 1, Dkt. No. 307 (the "Sale Order").[6]  The Sale Opinion

and Sale Order overruled all of Mission's objections to the proposed sale.  In doing so, the

Bankruptcy Court made certain findings and rulings including: (1) the purchase price was fair

and reasonable, (2) the Chapter 11 case was not filed in bad faith, (3) S&S acted at all times in

good faith and arms' length and did not act in bad faith in connection with the auction and

debtor-in-possession financing, *see* Sale Ord. ¶¶ 2, 15, (4) "there was no evidence of fraud,

collusion, or any other tainting of the sale process in the record," Sale Op. 37, (5) S&S was a

good faith purchaser and entitled to the protections afforded by § 363(m), *see id*. at 36, and (6)

the sale was approved and the Debtor and S&S were authorized to immediately consummate the

sale, *see* Sale Ord. ¶ 10.  Additionally, the Sale Order provided, among other things, that the

Debtor's assets were being sold free and clear of claims and interests (subject only to any claims

Mission may have pursuant to § 365(n) as determined by a final non-appealable order by a court

of competent jurisdiction) and that S&S would have no successor or vicarious liability.  *See* Sale

Ord. ¶ 5.  The specific "free and clear" language provided:

> Pursuant to section 363(f) of the Bankruptcy Code, the Assets are being sold and
> transferred free and clear of all liens[,] claims, interests, and encumbrances
> (collectively[, t]he "Liens") except as otherwise provided in the Successful
> Bidder's Purchase Agreement, with any and all such Liens to attach to proceeds
> of such sale with the same validity, priority, force, and effect such Liens had on
> the Assets immediately prior to the sale and subject to the rights, claims, defenses,
> and objections, if any, of the Debtor and all interested parties with respect to

---

[6] *In re Tempnology, LLC*, 542 B.R. 50, 52 (Bankr. D.N.H. 2015), *aff'd sub nom. Mission Prod. Holdings, Inc. v. Old Cold, LLC (In re Old Cold, LLC)*, 558 B.R. 500 (B.A.P. 1st Cir. 2016), *aff'd sub nom. Mission Prod. Holdings, Inc. v. Old Cold, LLC (In re Old Cold, LLC)*, 879 F.3d 376 (1st Cir. 2018).

any such asserted Liens, provided, however, the sale of the Assets shall not be free and clear of claims Mission Product Holdings, Inc. may have pursuant to 11 U.S.C. § 365(n) as determined by a final non-appealable order by a court of competent jurisdiction.

Sale Ord. ¶ 5.  Regarding successor or vicarious liability, the Court also ordered:

Except as expressly set forth in the Successful Bidder's Asset Purchase Agreement, the Successful Bidder shall have no successor or vicarious liabilities of any kind or character. Neither the purchase of the Assets by the Successful Bidder nor the subsequent operation by the Successful Bidder of any business previously operated by the Debtor, shall cause the Successful Bidder to be deemed a successor in any respect to the Debtor's business within the meaning of any law, rule or regulation[,] including but not limited to any revenue, pension, ERISA, tax, labor or environmental law, rule or regulation or under any products liability law with respect to the Debtor.

*Id*. at ¶ 14.  Further, the Sale Order included provisions enjoining the prosecution of certain claims not otherwise permitted by the asset purchase agreement (the "Asset Purchase Agreement").  *See id*. at ¶ 6.  In relevant part, such injunction is described as follows:

Except as expressly permitted by the Successful Bidder's Purchase Agreement as to any Liens, all persons and entities[,] including, but not limited to, . . . contract counterparties, . . . licensors, . . . and other persons, holding Liens of any kind or nature whatsoever against or in the Debtor or the Debtor's interests in the Assets (whether known or unknown, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of this chapter 11 case, whether imposed by agreement, understanding, law, equity, or otherwise), arising under or out of, in connection with[,] or in any way relating to, the Debtor, the Assets, the operation of the Debtor's business before the closing under the Successful Bidder's Asset Purchase Agreement or the transfer of the Debtor's interests in the Assets to the Successful Bidder, shall not assert, prosecute, or otherwise pursue any Liens against the Successful Bidder, its property (including, without limitation[,] the Assets), its successors and assigns, or interfere with the Successful Bidder's title to, use, or enjoyment of the Assets, in each case, without first obtaining an order of this Court after notice and a hearing permitting such Lien to proceed.

*Id*.

On December 18, 2015, the sale closed (the "Sale").[7]  *See* Notice of Closing, Dkt. No.
310.  Mission did not seek a stay of the Sale Order, but filed an appeal of both the Sale Opinion
and Sale Order on December 28, 2015.  *See* Notice of Appeal, Dkt. No. 333.  Both the United
States Bankruptcy Appellate Panel for the First Circuit (the "BAP") and the United States Court
of Appeals for the First Circuit (the "First Circuit") affirmed the Sale Order.  *See In re Old Cold,*
*LLC*, 558 B.R. 500, 520–21 (B.A.P. 1st Cir. 2016) (determining that the bankruptcy court did not
clearly err when concluding S&S conducted itself in good faith and that the bidding procedures
were conducted in good faith without evidence of fraud or collusion); *In re Old Cold LLC*, 879
F.3d at 386–88 (affirming both the Bankruptcy Court and BAP that S&S was a good faith
purchaser under § 363(m)).  The First Circuit affirmed the Bankruptcy Court's finding that S&S
was a good faith purchaser entitled to the protections of § 363(m) and ruled that Mission's
objections to the Sale were statutorily moot, as § 363(m) provides that an appeal of a sale of
property does not affect the validity of that sale unless the sale order was stayed.  *See In re Old*
*Cold LLC*, 879 F.3d at 383, 388–89.  The Sale Order became final when Mission did not seek
further appellate review of the First Circuit's decision.

At the time that the Sale Order became final, the appeal of the 365(n) Order remained
pending and would eventually be considered by the Supreme Court.  On November 18, 2016, the
BAP affirmed in part and reversed in part the Bankruptcy Court's decision regarding the effect
of rejection.  *See In re Tempnology LLC,* 559 B.R. at 825.  The BAP affirmed that § 365(n) did
not protect Mission's Exclusive Distribution Rights from rejection.  *Id*. at 817–18.  The BAP

---

[7] The Asset Purchase Agreement is attached as Exhibit 1 to the Sale Order.  *See* Sale Ord. 9.  In the Asset
Purchase Agreement, the "Purchaser" is defined as Schleicher & Stebbins Hotels, L.L.C., "including its
assignees."  *Id*. It appears from the record that S&S assigned its rights under the Asset Purchase
Agreement to Coolcore, an entity formed for the purpose of acquiring and operating the assets purchased
from the Debtor's estate.

explained that Mission's attempt to re-characterize its Exclusive Distribution Rights was "unsupported by either the letter or the spirit of the Agreement[,]" confirming that the Exclusive Distribution Rights and the Trademark license were separate provisions that served "two independent goals." *Id.* at 818. However, relying on the Seventh Circuit's decision in *Sunbeam Prod., Inc. v. Chicago American Manufacturing, LLC,* 686 F.3d 372 (7th Cir. 2012), the BAP held that Mission retained the right to use Tempnology's Trademarks after rejection, overruling that portion of the 365(n) Order. *Id.* at 820, 822–23. Although Mission prevailed before the BAP on the trademark issue, it appealed to the First Circuit on the other issues.

On January 12, 2018, the First Circuit affirmed the Bankruptcy Court's 365(n) Order, holding that "rejection left Mission with only a pre-petition damages claim in lieu of any obligation by [the] Debtor to further perform under either the trademark license or the grant of exclusive distribution rights." *In re Tempnology, LLC*, 879 F.3d at 392. The Court of Appeals rejected Mission's assertion that its Exclusive Distribution Rights under the Agreement were intellectual property rights, holding that "[a]n exclusive right to sell a product is not equivalent to an exclusive right to exploit the product's underlying intellectual property." *Id.* at 398. Moreover, the First Circuit concluded, while Mission had "salt[ed] its brief with several undeveloped suggestions that rejection under section 365(a)" might not extinguish its Exclusive Distribution Rights, it had never raised the argument in the Bankruptcy Court and, therefore, "the argument is waived in this civil action." *Id.* at 400–01.

Mission filed a petition for writ of certiorari, presenting two questions for the Supreme Court's review:

> 1. Whether, under §365 of the Bankruptcy Code, a debtor-licensor's "rejection" of a license agreement - which "constitutes a breach of such contract," 11 U.S.C. §365(g) - terminates rights of the licensee that would survive the licensor's breach under applicable non-bankruptcy law.

2. Whether an exclusive right to sell certain products practicing a patent in a particular geographic territory is a "right to intellectual property" within the meaning of §365(n) of the Bankruptcy Code.

*Mission Product Holdings, Inc. v. Tempnology, LLC (In re Tempnology, LLC)*, 879 F.3d 389 (1st Cir. 2018), *petition for cert. filed*, 2018 WL 2967405 (U.S. June 11, 2018) (No. 17-1657).  The Supreme Court granted the petition for certiorari solely as to the first question.  *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 879 F.3d 389 (1st Cir. 2018), *cert. granted in part*, 139 S. Ct. 397 (U.S. Oct. 26, 2018) (No. 17–1657).

The Supreme Court reversed the 365(n) Order in part as it related to the Bankruptcy Court's determination that Mission's election under § 365(n) provided no protectable interest in the Trademarks.  *Mission Prod. Holdings v. Tempnology, LLC*, 139 S. Ct. 1652, 1666 (2019). The Supreme Court held that "a debtor's rejection of an executory contract in bankruptcy has the same effect as a breach outside bankruptcy [and that s]uch an act cannot rescind rights that the contract previously granted. Here, that construction of Section 365 means that the debtor-licensor's rejection cannot revoke the trademark license." *Id.* at 1666.

The decision also addressed Mission's attempt to revive its exclusive distribution rights argument that the First Circuit had ruled had been waived:

> In its briefing before this Court, Mission contends that its exclusive distribution rights survived the licensing agreement's rejection for the same reason as its trademark rights did. See Brief for Petitioner 40–44; *supra*, at 1658. But the First Circuit held that Mission had waived that argument, see 879 F. 3d at 401, and we have no reason to doubt that conclusion. Our decision thus affects only Mission's trademark rights.

*Id.* at 1660 n.1.

On July 16, 2019, the First Circuit issued its Judgment on remand:

> In light of the Supreme Court's decision . . . we hereby vacate that portion of the judgment of the bankruptcy court holding that the Debtor's rejection of the

> parties' licensing agreement revoked Mission's right to use the Debtor's
> trademarks post-rejection, and we remand the case for further proceedings
> consistent with the Supreme Court's judgment. Each party shall bear its own costs
> for this appeal.

Judgment dated June 16, 2019, Dkt. No. 617.

The parties now disagree as to the effect of the Supreme Court's rulings, the Sale Opinion

and Order, and the 365(n) Opinion and Order as they relate to Mission's remaining rights and

remedies as demonstrated by the positions taken in relation to Mission's effort to amend the

complaint that is the subject of the Motion currently before this Court.

**B.      The Adversary Proceeding**

On November 17, 2015, Mission filed a complaint (the "Complaint")[8] with the Supreme

Court of the State of New York, County of New York (the "State Court Action"), Index No.

653791/2015, naming S&S as a defendant and claiming that S&S tortiously interfered with

Mission's Agreement with the Debtor.  *See* Compl. ¶¶ 26–31.  Prior to filing an answer to the

Complaint, S&S removed the action to the U.S. District Court for the Southern District of New

York (the "Removed Action").  *See* Mot. ¶ 12; Notice of Removal 33–38.  Thereafter, on

December 22, 2015, S&S filed a motion to dismiss or transfer the Removed Action to the U.S.

District Court for the District of New Hampshire (the "Motion to Dismiss/Transfer").  *See* Mot. ¶

13; Notice of Removal 58–348.  On request of the parties, the Southern District of New York

stayed the action pending the outcome of appeals originating from the Debtor's bankruptcy case,

and on March 9, 2018, the parties filed a status report and jointly requested the transfer of the

removed action to the District of New Hampshire.  *See* Mot. ¶¶ 13–14; Notice of Removal 392–

394.  On March 12, 2018, the Southern District of New York granted the joint request to transfer.

---

[8] A copy of the Complaint was attached to the notice of removal regarding Civil Case 18-cv-00223-BR
referred from U.S. Dist. Ct. [AP Dkt. 1] (the "Notice of Removal").  *See* Notice of Removal 20–32.

*See* Mot. ¶ 13; Notice of Removal 395–397.  On March 19, 2018, the Removed Action was transferred from the Southern District of New York to the District of New Hampshire.  *See* Notice of Removal 398.  On March 22, 2018, the parties filed an Assented-To Motion to Refer Case to Bankruptcy Court (the "Referral Motion"), which the District of New Hampshire granted.  *See id.* 1–8.

On May 25, 2018, this Court stayed the Adversary Proceeding [AP Dkt. No. 8] (the "Stipulated Stay Order"), pending full and final resolution of Mission's contemplated appeal of the 365(n) Order to the Supreme Court. Stipulated Stay Ord. 1–2.  The parties reserved all rights regarding the stayed matters, including jurisdictional arguments that have been or could have been raised.  *See id.* at 3.  After a status conference following the issuance of the Supreme Court's decision, the Court terminated the stay of the Adversary Proceeding and established new procedural deadlines [AP Dkt. No. 14] (the "Procedural Order"), which were subsequently extended.[9]

Mission now seeks leave to amend the Complaint to add Coolcore and Mr. Stebbins as defendants and assert additional claims against S&S and the Proposed Defendants.[10]  *See* Am. Compl., Ex. B.  Mission seeks to add a claim for: (1) breach of contract on a theory of successor liability against Coolcore for Tempnology's breach, (2) interference with and conversion of Mission's property rights, and (3) intentional interference with Mission's pre-contractual relations (collectively, the "Proposed Amended Claims").  *See* Am. Compl. ¶¶ 46–60.

---

[9] The Court further modified the Procedural Order's deadlines upon granting an assented-to motion to extend.  *See* A.P. Dkt. No. 17.

[10] A copy of the proposed amended complaint (the "Amended Complaint") is attached as Exhibit B to the Motion.

## II.     **JURISDICTION**

The District Court has original jurisdiction with respect to this Chapter 11 case and

original, but not exclusive, jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. §

1334(a) and (b).  Pursuant to 28 U.S.C. § 157, Rule 77.4(a) of the local rules of the District Court

for the District of New Hampshire, and, with respect to the Adversary Proceeding, the order

granting the Referral Motion, the District Court has referred the underlying Chapter 11 case and

the related Adversary Proceeding to this Court.  Mission's Proposed Additional Claims depend

on an interpretation of the Sale Order and its finality, although they are framed as state law

claims.[11]  *See In re Middlesex Power Equip. & Marine, Inc.*, 292 F.3d at 68; *In re Motors*

*Liquidation Co.*, 522 B.R. 13, 20 (Bankr. S.D.N.Y. 2014) (finding that court had "arising in"

subject matter jurisdiction to enforce its sale order); *White v. Kubotek Corp.*, 487 B.R. 1, 7 (D.

Mass. 2012); *but see, generally, Gupta v. Quincy Med. Ctr.*, 858 F.3d 657, 664 (1st Cir. 2017)

(finding that a bankruptcy court could not exercise subject matter jurisdiction where claims

based on a state law breach of contract theory did not "arise in," "arise under," or "relate to"

Title 11, even though the sale order entered by the court included a retention of jurisdiction

provision regarding enforcement of and disputes relating to the sale order).  This Court has

---

[11] Bankruptcy courts have subject matter jurisdiction to hear "cases under title 11," 28 U.S.C. § 1334(a), and "proceedings arising under title 11, or arising in or related to cases under title 11," 28 U.S.C. § 1334(b). "Arising under" proceedings are those cases in which the cause of action is created by Title 11. *See, e.g., New England Power & Marine, Inc. v. Town of Tyngsborough (In re Middlesex Power Equip. & Marine, Inc.)*, 292 F.3d 61, 68 (1st Cir. 2002). "Arising in proceedings generally are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside the bankruptcy." *Id.* (quotations and citations omitted). "Related to" proceedings are those that "potentially have some effect on the bankruptcy estate." *Id.* (internal quotations and citation omitted); *see also Boston Reg'l Med. Ctr., Inc. v. Reynolds (In re Boston Reg'l Med. Ctr., Inc.)*, 410 F.3d 100, 105 (1st Cir. 2005) (stating that "[t]he statutory grant of 'related to' jurisdiction is quite broad. Congress deliberately allowed the cession of wide-ranging jurisdiction to the bankruptcy courts to enable them to deal efficiently and effectively with the entire universe of matters connected with bankruptcy estates").

subject-matter jurisdiction in this Adversary Proceeding because Mission's claims either "arise in" or are "related to" Title 11.

The Court's constitutional authority to issue final orders, however, is a separate consideration because it is not necessarily co-extensive with subject matter jurisdiction. While S&S asserted in the Referral Motion that the Complaint constituted a core proceeding under 28 U.S.C. § 157(b)(2)(A)(N), and (O) (providing that core proceedings include "matters concerning the administration of the estate;" "orders approving the sale of property . . . ;" and "other proceedings affecting the liquidation of the assets of the estate . . .") and courts have found that the interpretation and enforcement of an order resulting from a prior "core proceeding" also constitutes a "core proceeding," the Court does not need to reach whether this is a core or noncore proceeding pursuant to 28 U.S.C. § 157(c), because Mission and S&S have consented to this Court entering final orders. *See, e.g., Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 686 (2015) (determining that "Article III permits bankruptcy courts to decide Stern claims submitted to them by consent"); *White*, 487 B.R. at 7–8 (concluding that "[t]he Bankruptcy Court had statutory authority to rule because interpreting and enforcing an order resulting from a prior 'core proceeding' also constitutes a 'core proceeding'").

Venue with respect to this Chapter 11 case is proper in this District pursuant to 28 U.S.C. § 1408, and venue with respect to this Adversary Proceeding is proper in this District pursuant to 28 U.S.C. § 1409.

### III.    LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 15(a)(2), as made applicable by Fed. R. Bankr. P. 7015, the "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "This permissiveness, though, extends only so far." *Privitera v. Curran (In re Curran)*, 855 F.3d

19, 27 (1st Cir. 2017).  "A court may deny leave to amend for a variety of reasons, including 'futility, bad faith, undue delay, or a dilatory motive on the movant's part.'" *Id*. at 27–28 (quoting *Hatch v. Dep't for Children, Youth & Their Families*, 274 F.3d 12, 19 (1st Cir. 2001)); *see also Foman v. Davis*, 371 U.S. 178, 181 (1962) (referencing certain bases for denial, "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.").

"In assessing futility, the [court] must apply the standard which applies to motions to dismiss under Fed. R. Civ. P. 12(b)(6)." *Adorno v. Crowley Towing & Transp. Co.*, 443 F.3d 122, 126 (1st Cir. 2006); *see also Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996) (explaining that "[t]here is no practical difference ... between a denial of a motion to amend based on futility and the grant of a motion to dismiss for failure to state a claim").  In assessing whether a claim would be dismissed, the Court must "take all well-pleaded facts as true, but . . . need not credit a complaint's bald assertions or legal conclusions," *Glassman*, 90 F.3d at 628 (internal quotations omitted), and must draw all reasonable inferences favorable to the plaintiff, *see, e.g., Sanchez v. Pereira–Castillo*, 590 F.3d 31, 41 (1st Cir. 2009).  In applying the Fed. R. Civ. P. 12(b)(6) pleading criteria, an attempt to amend is regarded as futile if the proposed complaint fails to allege "sufficient facts to show that . . . a plausible entitlement to relief." *Sanchez*, 590 F.3d at 41 (citing *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)). The motion to dismiss standard is satisfied and the claimant should be allowed to proceed on the merits only "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief." *Foman,* 371 U.S. at 182.

14

IV.      **POSITIONS OF THE PARTIES**

A.     **Mission**

Mission asserts that it should be granted leave to file the Amended Complaint because S&S consented to a stay of the litigation and the Adversary Proceeding is, therefore, still in its early stages, as S&S has filed no answer to the Complaint and discovery has not begun.  *See* Mot. ¶ 25.  Since S&S agreed to several stays of this Action, Mission asserts, this request to amend cannot be said to be the product of undue delay, bad faith or dilatory motive, nor work undue prejudice upon S&S, "its commonly managed affiliate" Coolcore, or their common manager Mr. Stebbins.  *Id.*  Mission contends that S&S, Coolcore (through its common manager with S&S), and Mr. Stebbins have actively participated in and consented to several stays of this lawsuit while the related litigation has continued.  *Id.*  Mission requests that the Court grant leave to amend the Complaint to add claims for violation of rights that it contends were confirmed by the Supreme Court's decision, a decision that had not yet been issued when the original Complaint was filed, and for continuing violations of those rights or new violations that occurred after the filing of the Complaint.  *Id.* at ¶ 27.

As to the Proposed Amended Claims, Mission contends that the successor liability claim arises from the same facts as the single count asserted in the Complaint, but now includes Coolcore, which Mission asserts is liable as the successor in interest to S&S as purchaser of the estate assets.  Mot. ¶ 27.  As to the other proposed counts, Mission argues that both the existing and the Proposed Defendants were aware that Mission had taken the position that its rights under the Agreement survived rejection and that the purchaser took subject to all such rights, and as such, those proposed claims also arise from the same conduct as the existing count, which conduct continued post-filing of the Complaint.  *Id.*  Mission argues that these claims asserted in

the Amended Complaint are not futile because, at bare minimum, each possesses "enough heft to set forth a plausible entitlement to relief." Mot. ¶ 28 (quoting *Gagliardi v. Sullivan,* 513 F.3d 301, 305 (1st Cir. 2008) (internal quotations omitted)). Mot. ¶ 28.

Mission asserts that the Sale Order did not operate to sell assets free and clear of Mission's surviving rights under the Agreement and that "all parties acknowledged that the non-exclusive, global, perpetual license to exploit the subject technology survived the rejection of the Agreement and the sale." *Id.* at ¶ 29 (citing *In re Tempnology LLC*, 559 B.R. at 817).[12] Responding to arguments that collateral estoppel precludes the amended claims, Mission argues that a "free and clear" sale order does not immunize S&S and Coolcore from liability for their actions arising post-Closing. *Id.* at ¶ 30 (citing *In re Motors Liquidation Co.*, 568 B.R. 217, 230 (Bankr. S.D.N.Y. 2017) ("[C]auses of action [that] are based solely on New GM's alleged post-closing wrongful conduct" not barred by sale order); *In re Old Carco, LLC*, B.R. 182, 199 (Bankr. S.D.N.Y. 2018) ("A §363 sale order may not bar a claim that arises from wrongful conduct occurring after the sale . . . . [P]unitive damage claims cannot be barred by the Sale Documents to the extent they are based solely on the post-Closing conduct of New Chrysler.")). Mission also asserts that nonmutual collateral estoppel cannot be asserted by any of the parties because they were not parties to the litigation regarding the Sale Order or 365(n) Order and the issue of Mission's post-rejection rights were never actually litigated, other than its rights under § 365(n). Mission Reply ¶¶ 4, 5.

In addition, Mission argues that a sale of intellectual property assets cannot be "free and clear" of an intellectual property counterparty's interests under § 363(f) unless the licensee

---

[12] The Bankruptcy Appellate Panel stated: "it is undisputed that, due to its § 365(n) election, Mission retained its rights . . . . in section 15 of the Agreement and could exercise those rights free from interference by the Debtor." 559 B.R. at 817.

consents.  Mot. ¶ 31 (citing, among other cases, *In re Crumbs Bake Shop, Inc.*, 522 B.R. 766, 774 (Bankr. D.N.J. 2014) ("[I]n the absence of consent, a sale under §363(f) does not trump the rights granted to [l]icensees by §365(n)"); *Compak Cos., LLC v. Johnson*, 415 B.R. 334, 339–40 (N.D. Ill. 2009) (a § 363 sale that enters without objection may extinguish an intellectual property license).  Mission maintains that Tempnology's assets could not, as a matter of law, have been sold "free and clear" of Mission's intellectual property rights, and S&S (and, by extension, its assignee Coolcore) took subject to those rights.  Mot. ¶ 32 (citing *Compak Cos.*, 415 B.R. at 339–40).  Mission asserts that S&S (and, by extension, Coolcore as assignee) took Tempnology's assets subject to whatever limitations Tempnology had in those assets, including the obligation to not permit third parties to sell or distribute the "Exclusive Products" in the "Exclusive Territory" (as used and/or defined in the 365(n) Order).  Mot. ¶ 33.  Mission further asserts that, because the Sale Order was entered after the 365(n) Order had been appealed, the Bankruptcy Court did not have jurisdiction to determine Mission's rights with respect to the Agreement, even if it had intended to do so.  Mission Reply ¶ 11.

Mission acknowledges that the claims asserted by the Amended Complaint are subject to New Hampshire's three-year statute of limitations and that the claims have been asserted after the expiration of that period.  *Id.* at ¶ 22.  *See* N.H. Rev. Stat. Ann. § 508:4(I) (2021) (providing three-year limitations period for all personal actions); *Bradley v. Wells Fargo Bank, N.A.*, No. 12-cv-127-PB, 2013 WL 6681610, at *5 (D.N.H. Dec. 18, 2013) ("The three year New Hampshire statute of limitations applies to actions in contract as well as tort, unless the claim is otherwise limited by a particular statute"); *Hatton v. TD Bank, N.A. (In re Hatton)*, Adv. No. 17-1054-BAH, 2018 WL 770363, at *20–21 (Bankr. D.N.H. Feb. 7, 2018) (applying New Hampshire statute of limitations to dismiss various state law contract and tort claims).  Mission

argues that the proposed claims are timely because of application of the discovery rule or the doctrine of equitable tolling.  Mission Reply ¶ 23.  Mission contends that, until the Supreme Court's decision became final, it had no judicially cognizable claims as a result of the Bankruptcy Court's rulings.  *Id.* at ¶ 24.  In the alternative, Mission argues that relation back principles permit it to assert the Proposed Amended Claims because they arise from the same facts and circumstances alleged in the original Complaint, would not surprise any defendant, and do not introduce an entirely new cause of action.  *Id.* at ¶ 42.  Mission contends that, because Mr. Stebbins controls both S&S and Coolcore and has been directly involved in the litigation at all times, relation back of the proposed claims against Mr. Stebbins and Coolcore would not impose an unfair surprise and would not implicate the statute of limitations.  *Id.* at ¶ 41–42.

## B.    S&S

S&S opposes the Motion on the grounds that the Proposed Amended Claims are barred by the applicable statute of limitations.  Obj. ¶ 29.  S&S also asserts that the claims proposed to be asserted in the Amended Complaint are barred by the preclusive effect of the Sale Order and 365(n) Order.  *Id.* at ¶¶ 70, 71.  S&S characterizes Mission as "resid[ing] in an alternate universe" with respect to its positions regarding the content and effect of a number of relevant orders entered by the Bankruptcy Court and the appellate courts.  *Id.* at 1.  As such, S&S contends the Motion should be denied because the proposed amendment would be futile.  *Id.* at ¶¶ 29, 56, 84, 99.

Absent application of the discovery rule, equitable tolling, or relation back, the claims in the Proposed Amended Complaint would be time barred.  S&S asserts that none of those exceptions apply to the proposed claims.  S&S Reply Br. 2.  First, S&S argues that the discovery rule does not apply because Mission's claims were actually known and knowable within the

applicable statute of limitations.  *Id.* at ¶¶ 57, 58.  S&S asserts that New Hampshire law does not permit application of the discovery rule where the fact that a plaintiff has been injured and causation are known to that plaintiff—even if a basis for recovery is not clear under the law.  *Id.* at ¶ 58.

Second, S&S argues that Mission's claims were cognizable and enforceable at all times until the statute of limitations, notwithstanding the adverse rulings of the Bankruptcy Court that were the subject of an appeal, and that the claims could have been asserted in good faith within the statute of limitations.  *Id.*  As such, equitable tolling should not apply.  *Id.*  S&S further asserts that the stay of this litigation has not resulted in any tolling of the statute of limitations. Obj. ¶ 40.  S&S argues by analogy that, under New Hampshire law, a statute of limitations does not toll during a stay pending appeal, even when the harm underlying the plaintiff's claims is contingent on the resolution of the appellate process.  *See id.* at ¶ 37 (citing *Draper v. Brennan*, 142 N.H. 780, 787 (1998) (refusing to toll the statute of limitations for a legal malpractice claim during pendency of appeal, even though effect of order in underlying case was stayed)).  S&S argues that the voluntary stay of this litigation during the pendency of the several appeals of the 365(n) Order demonstrates that Mission was not "actively misled" in any way and that Mission was not otherwise prevented from asserting its claims by an "extraordinary circumstance" that could result in equitable tolling of its claims under New Hampshire law.  S&S Reply Br. ¶¶ 81, 86 (citing *Kierstead v. State Farm Fire & Cas. Co.*, 160 N.H. 681, 688–89 (2010), for the proposition that equitable tolling applies if the defendant misleads the plaintiff about the cause of action).

Third, S&S argues that the Proposed Amended Claims cannot relate back under either federal or New Hampshire law.  *See* Obj. ¶ 41.  It contends that most of the new claims against

Coolcore and Mr. Stebbins involve post-Sale conduct and therefore do not relate back under Rule 15(c)(1)(B)'s common occurrence test.  *Id.* at ¶¶ 43–46.  It argues further that, because the omissions of Coolcore and Mr. Stebbins from the Complaint are not instances of mistaken identity or misnomer, the claims against them cannot relate back.  *Id.* at ¶ 53.  The Complaint, filed on the day that Coolcore was created, contained no allegations of conduct that could have been mistakenly attributed to another party.  *Id.*  S&S asserts that, to bring claims against Coolcore, Mission was required to actually file suit against it within the applicable statute of limitations "rather than rely on a complaint that did not name Coolcore as a defendant and did not involve any conduct related to Coolcore."  *Id.*  As to the proposed additional claims, S&S contends that Mission made a conscious choice to not bring suit against Mr. Stebbins in the Complaint.  Obj. ¶ 54.  S&S cites passages in the Complaint and other statements in the record referencing acts taken by Mr. Stebbins and alleging that Mr. Stebbins effectively controlled Tempnology.  *Id.*  S&S argues that it is clear that Mission believed that Mr. Stebbins acted in a manner giving rise the claims it asserted and deliberately chose not to sue him when it filed its Complaint, such that relation back could be based on mistaken identity and would not be proper.  *Id.* at ¶¶ 54–55.  S&S asserts that there is no basis for Mission to contend that "either Stebbins or Coolcore 'should have known that the action would have been brought against [them], but for a mistake concerning the proper party's identity.'"  *Id.* at ¶ 55 (quoting *Krupski v. Costa Crociere S. p. A*, 560 U.S. 538, 549 (2010)).

S&S also argues that certain findings and rulings in the Sale Order and 365(n) Order operate to preclude the assertion of the Proposed Amended Claims and that the Motion should be denied because amendment would be futile.  S&S Reply Br. ¶¶ 23–24.  S&S's position and Mission's responses will be discussed in greater detail below, but to summarize, S&S contends

20

that the following provisions in the Sale Order preclude Mission from asserting the Proposed

Amended Claims (i) "good faith"-related findings, (ii) "free and clear" findings pursuant to

§363(f), "except for claims that Mission [] may have pursuant to 11 U.S.C. §365(n)," and (iii)

"no successor liability" and injunction provisions (Sale Order, ¶¶ 6, 14).  *See generally*, Sale

Ord. ¶¶ 5–6, 14; S&S Reply Br. ¶¶ 18, 25, 26, 88; Obj. ¶¶ 95–96, 99.  S&S characterizes the

Proposed Amended Claims as a collateral attack on prior orders of the Bankruptcy Court that are

final, and such amendments are an effort to circumvent rulings of the both the Bankruptcy Court

and appellate courts.  Obj. ¶¶ 23, 96, 97.

## V.      DISCUSSION

### A.      Preclusive Effect of the Sale Order and 365(n) Order

To determine whether the Motion should be denied because the proposed amendment to

the Complaint would assert claims that are futile, the Court must determine whether the Sale

Order and 365(n) Order preclude those claims or make factual findings fatal to an element of any

of those claims.

The Sale Order and Sale Opinion are final and contain numerous relevant findings of fact

and rulings of law. As quoted above,[13] the Sale Order contains language providing that the assets

to be conveyed pursuant to the Asset Purchase Agreement will be transferred "free and clear" of

liens, claims, and interests pursuant to § 363(f).  Sale Ord. ¶ 5.  Prior to the Sale Order entering,

Mission objected to the Sale, asserting that the Agreement was not executory and that

Tempnology's assets could not be sold free and clear of any rights and remedies preserved by its

election under § 365(n).  Sale/Rejection Obj. ¶¶ 15, 16–18, 21.  Similarly, in its Proposed

Findings of Fact, Conclusions of Law, Orders for Relief [Dkt. No. 278] ("Mission's Proposed

---

[13] *See supra* at 5–6.

Findings and Rulings") relating to the evidentiary hearing to consider approval of the Sale, Mission asserted that "no sale can be approved which eliminates [its] rights under 365(n), to the extent the appeals court determines that Mission has such rights."  Mission's Proposed Findings and Rulings ¶ 43.  Mission did not raise any other basis for retaining its rights in that pleading. *Id.*  Ultimately, the Sale Order entered and contained a limited carveout from the "free and clear" language providing that "the sale of the Assets shall not be free and clear of claims Mission Product Holdings, Inc. may have pursuant to 11 U.S.C. § 365(n) as determined by a final non-appealable order by a court of competent jurisdiction."  Sale Ord. ¶ 5.  Mission appealed the Sale Order, but did not seek a stay of that order pending determination of the appeal.  *See* Notice of Appeal 1, Dkt. No. 333.  After affirming the good faith findings of the Bankruptcy Court and determining that S&S was entitled to the protections of § 363(m) as a good faith purchaser, the First Circuit affirmed the Sale Order because the appeal was statutorily moot.  *In re Old Cold LLC*, 879 F.3d at 388–389.  As such, S&S or Coolcore, its assignee, acquired the assets of Tempnology subject only to claims and interests preserved under § 365(n) as would be determined after appeals had been exhausted and the 365(n) Order became final.

The carveout provision of the Sale Order is clear and limits Mission's possible claims and interests in the transferred assets to "claims under § 365(n)."[14]  Sale Ord. ¶ 5.  Mission argues now that the Bankruptcy Court could not have ordered a sale free and clear of its exclusive rights to sell certain products provided under the Agreement.  *See* Mot. ¶ 29.  That may be an accurate general statement of the law today, after the Supreme Court's decision regarding the 365(n) Order and the effect of rejection of an executory contract applying § 365(a) and (g), and other

---

[14] At the post-Auction hearing held on November 18, 2015 regarding, *inter alia*, the Sale Motion, Judge Deasy noted that "there would have to be a carve-out in any final order [approving the sale] for whatever those rights might be under a final court order, which we don't have yet."  Hr'g Tr. 10:23–11:1, Dkt. No. 456.

applicable law, but in this case, the Sale Order did just that. By limiting the basis of its objection to any rights that may have been determined to have been preserved by its election under § 365(n), Mission waived all other objections that it may have had. Mission did not seek a stay pending appeal and was not successful in its appeal of the Sale Order. When the Supreme Court decided that Mission had no rights under § 365(n) and rejected consideration of whether Mission could have rights of exclusivity under other provisions of § 365 or other applicable law as having been waived by Mission, the carveout provided in the Sale Order no longer operated to exclude any claim or interest in or to the assets of Tempnology that were sold to S&S from the "free and clear" provisions of that order. *See Mission Prod. Holdings, Inc.*, 139 S. Ct. at 1660, n.1.

While the result may be anomalous with the rights and remedies a counterparty to an exclusive distribution agreement may assert after rejection of that agreement as established by the Supreme Court's decision, the result in this case is mandated by the language of the Sale Order and the 365(n) Order, which constitute the law of the Chapter 11 case and have preclusive effect in this Adversary Proceeding. "[I]ssue preclusion prevent[s] relitigation of wrong decisions just as much as right ones." *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 157 (2015) (alteration in original) (quoting *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 716 F.3d 1020, 1029 (8th Cir. 2013)); *see also Federated Dep't. Stores, Inc. v. Moitie,* 452 U.S. 394, 398 (1981) (concluding that "the res judicata consequences of a final, unappealed judgment on the merits are not altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case"); *Baltimore SS Co. v. Phillips*, 274 U.S. 316, 325 (1927) (determining a final judgment "based upon an erroneous view of the law is not open to collateral attack"); *Bath Iron Works Corp. v. Dir., Office of Workers' Comp. Programs*, 125 F.3d 18, 22 (1st Cir. 1997) (holding that "the point of collateral estoppel is that the first

determination is binding not because it is right but because it is first . . .”); *Vargas-Colón v. Fundación Damas, Inc.*, 864 F.3d 14, 29 (1st Cir. 2017) (same); *White*, 487 B.R. at 12 (observing that the doctrines of res judicata and collateral estoppel apply to sale orders because bankruptcy courts have statutory authority to enter a final order).

S&S and its assignee, Coolcore, are entitled to the protections of § 363(m), which operates to protect the "deal" that S&S made with the Debtor from challenges through appeals of ancillary orders integral to the sale process. *See Anheuser-Busch, Inc. v. Miller (In re Stadium Mgmt. Corp.)*, 895 F.2d 845, 847, 849 (1st Cir. 1990) (determining, where assumption and assignment of a sublease was "integral" to the sale, appeal of the order approving the assumption and assignment was moot by operation of § 363(m) even though separate from the sale order). In assessing the policies embodied in § 363 sales of finality and protection of good faith purchasers, and the complementary concerns of refraining from deciding cases in which there can be no remedy without compromising the integrity of sale that is final, the First Circuit has observed that the explicit language of § 363(m) is that a sale must be "authorized" under § 363(b), not that it be "proper," such that unstayed sales authorized under § 363(b) will not be disturbed whether the approval was correct or not. *See id.* at 847–49.[15]  Here, Mission stated its

---

[15] The Court notes that the First Circuit relied on a decision from the Court of Appeals for the Seventh Circuit, *In re Sax*, 796 F.2d 994, 997–98 (7th Cir. 1986), for the proposition that a sale authorized under § 363(b) would moot a subsequent appeal where no stay pending appeal was obtained, which decision has been subsequently overruled on this point by *Trinity 83 Dev., LLC v. Colfin Midwest Funding, LLC*, 917 F.3d 599, 602–03 (7th Cir. 2019) (recognizing that the *Sax* decision arose from a challenge to the sale itself, not a dispute about who was entitled to the proceeds, but finding because of confusion on how *Sax* has been subsequently applied in *In re River W. Plaza-Chicago, LLC*, 664 F.3d 668, 672 (7th Cir. 2011) to support that case's holding that § 363(m) limits judicial control over the disposition of proceeds generated by a sale and concluding that "363(m) does not make any dispute moot or prevent a bankruptcy court from deciding what shall be done with the proceeds of a sale or lease."). The First Circuit's pronouncement with respect to § 363(m) and mootness remains undisturbed and in *In re Old Cold LLC*, 879 F.3d at 388–89, it affirmed that Mission's challenges to the Sale Order were statutorily moot because S&S was a good faith purchaser and the sale was not stayed.

objections and exhausted its appellate rights.  The terms of the Sale Order eliminated Mission's claims and interests in and to the assets transferred by Tempnology to S&S and its assignees that could have arisen from the Exclusive Distribution Rights provisions of the Agreement.

## B.      Nonmutual Collateral Estoppel

The 365(n) Order is final with respect to its determination that "Mission's election pursuant to 11 U.S.C. § 365(n) provides no protectable interest in the Debtor's 'Exclusive Products' and the 'Exclusive Territory' as those terms are defined in the Agreement."  365(n) Ord. ¶ 4.  Addressing "undeveloped suggestions [in Mission's appellate brief] that rejection under section 365(a), even if allowed, might not extinguish a right to demand specific performance of the negative covenant implicit in the exclusive distribution rights," the First Circuit held that Mission "never raised any such argument in the bankruptcy court as a basis for preserving its exclusive distribution rights."  *In re Tempnology, LLC,* 879 F.3d at 400–401.  The Supreme Court accepted the First Circuit's determination that that argument was not presented to the Bankruptcy Court and, as such, had been waived.[16]  *Mission Prod. Holdings, Inc.,* 129 S. Ct. at 1660, n.1.  Mission now attempts to avoid the preclusive effects of the Sale Order and 365(n) Order with respect to these proposed claims against parties who were not "parties" to the appeals of the Sale Order or 365(n) Order by contending that its Exclusive Distribution Rights beyond § 365(n) and post-rejection claims have never been adjudicated.  Unfortunately for Mission, based on the interrelationship between the Sale Order and the 365(n) Order, the Court concludes that those final orders did adjudicate all of Mission's rights with respect to the Agreement as those rights relate to the transferred assets.

---

[16] The mandate to this Court by the First Circuit provides that the Court determine, consistent with the Supreme Court's holding, the scope of the Debtor's Trademark rights post-rejection of the Agreement. *See* Judgment dated June 16, 2019.

Collateral estoppel, often referred to as issue preclusion, "bars parties from re-litigating issues of either fact or law that were adjudicated in an earlier proceeding." *Robb Evans & Assocs., LLC v. United States*, 850 F.3d 24, 31 (1st Cir. 2017).[17]   Collateral estoppel is applicable to both "ultimate issues" and "necessary intermediate findings . . . to preclude relitigation." *Rodríguez-García v. Miranda-Marín*, 610 F.3d 756, 771 (1st Cir. 2010).  This doctrine requires that "(1) both proceedings involved the same issue of law or fact, (2) the parties actually litigated that issue, (3) the prior court decided that issue in a final judgment, and (4) resolution of that issue was essential to judgment on the merits." *Global NAPs, Inc. v. Verizon N.E. Inc.*, 603 F.3d 71, 95 (1st Cir. 2010).

A defendant who was not a party to an earlier proceeding may assert collateral estoppel defensively, which is often referred to as nonmutual defensive collateral estoppel or nonmutual issue preclusion, to prevent a plaintiff from asserting an issue that the plaintiff has previously litigated and lost against a different defendant, "provided that the party against whom issue preclusion is asserted has had a full and fair opportunity for judicial resolution of the same issue." *Vargas-Colón*, 864 F.3d at 28 (internal quotations omitted); *see also Rodríguez-García*, 610 F.3d at 771; *Eagle-Picher Indust., Inc. v. Am. Emp'rs Ins. Co.*, CIV. A. No. 83-348-Z, 1984 WL 13995, at *1 (D. Mass. Nov. 8, 1984) (applying nonmutual defensive collateral estoppel where the plaintiff "had and fully seized its opportunity to litigate the trigger issue in its first lawsuit" choosing its defendants and theory of coverage and finding that plaintiff is "now barred from relitigating that issue by merely switching adversaries. To hold otherwise would ignore the

---

[17] The particular finding entitled to preclusive effect having been made by this Court, "federal common law controls the question of issue preclusion in this case." *Vargas-Colón*, 864 F.3d at 25.

fundamental goals of finality, consistency, and efficiency that justify the doctrine of collateral

estoppel") (internal quotations and citations omitted).

"In practice, determining whether the plaintiff had a full and fair opportunity to litigate

the issue boils down to the same four-factor test applicable to issue preclusion more generally."

*Photographic Illustrators Corp. v. Orgill, Inc.*, 370 F. Supp. 3d 232, 242 (D. Mass. 2019), *aff'd*,

953 F.3d 56 (1st Cir. 2020).  The "actually litigated" prong of the doctrine requires that, in the

prior proceeding, a court of competent jurisdiction rendered a final decision and judgment on the

merits.  In addition, parties may not relitigate issues based on newly presented evidence or

arguments, where nonmutual collateral estoppel applies.  *See, e.g., Yamaha Corp of Am. v.

United States*, 961 F.2d 245, 257–58 (D.C. Cir. 1992) (stating "once an issue is raised and

determined, it is the entire issue that is precluded, not just the particular arguments raised in

support of it in the first case" and refusing to take new evidence to support an argument that

could have been submitted to the prior court based on issue preclusion).  By precluding a party

from re-litigating an issue by advancing new arguments or evidence after a final judgment has

entered against it, nonmutual collateral estoppel promotes judicial economy, in addition to

promoting fairness to all parties.  *See, e.g., Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322,

328-330 (1979) ("Although neither judges, the parties, nor the adversary system performs

perfectly in all cases, the requirement of determining whether the party against whom an

estoppel is asserted had a full and fair opportunity to litigate is a most significant safeguard.")

(internal quotation omitted); *Romallo Bros. Printing, Inc. v. El Dia, Inc.*, 490 F.3d 86, 92 (1st

Cir. 2007) (affirming application of collateral estoppel to bar claims based on new theories;

plaintiff's unsuccessful suit challenging policy barred, on collateral estoppel grounds, his second

suit challenging the same policy, notwithstanding that plaintiff sued in different capacities in

each case or that the event triggering the second case did not happen until after judgment in the first case was entered, since the challenged policy did not change in any material way from one suit to the next).[18]

Mission asserts that its exclusive distribution rights were "never actually decided in a final judgment on the merits as required to invoke preclusion," because its arguments outside the scope of § 365(n) were held to have been waived.  Mission Reply ¶¶ 6–7.  Mission argues that "a waiver finding in one case is not the type of finding entitled to issue preclusion in another case[, because] waiver as a general matter is a procedural determination that governs only the case in which it is made—not another case."  *Id*. at ¶ 6 (quoting *Clark v. Zwanziger (In re Zwanziger)*, 741 F.3d 74, 78 (10th Cir. 2014)).

As a general proposition, Mission is correct; however, the limitations on the preclusive effect of judgments based on waiver and authorities to which Mission cites, none of which involved a sale order under § 363, are distinguishable by the unique circumstances of this case and the interrelationship between the Sale Order and 365(n) Order.[19]  The necessary reliance by

---

[18] *See also, generally*, 18 James Wm. Moore et al., *Moore's Federal Practice* § 132.02 (3d. ed. 2019) ("If a new legal theory or factual assertion raised in the second action is relevant to the issues that were litigated and adjudicated previously, the prior determination of the issue is conclusive on the issue despite the fact that new evidence or argument relevant to the issue was not in fact expressly pleaded, introduced into evidence, or otherwise urged"*); Pignons S.A. de Mecanique v.  Polaroid Corp.*, 701 F.2d 1, 2–3 (1st Cir. 1983) (applying the doctrine of collateral estoppel despite new theories, evidence, and arguments to support new claims and observing that the plaintiff had a fair opportunity to make these arguments and to introduce this evidence the first time).

[19] Mission cites certain cases for the proposition that final orders based on waiver may not be preclusive, but the cases were factually dissimilar to the present case. *See* Mission Reply ¶¶ 6–7.  In *In re Zwanziger*, for example, the Tenth Circuit Court of Appeals found that a prior district court order reversing the damages portion of its judgment on the ground that creditors had waived their right to emotional distress damages awarded by district court in compensation for debtor's fraud because they failed to include that claim or theory of damages in the final pretrial order and remanding for determination as to whether verdict could still stand based on evidence independent of emotional distress or if a new trial were necessary on damages issue, was not a decision on the merits, where the debtor filed for bankruptcy prior to the district court's recalculating damages, concluding that issue preclusion did not apply so as to bar the bankruptcy court from subsequently addressing the issue of damages for emotional distress on the

good faith purchasers on the enforceability of final bankruptcy sale orders distinguishes this type

of case from other cases that have considered nonmutual defensive collateral estoppel in other

contexts.  Mission had a full and fair opportunity to object to the Sale Order, and it did so.  Any

objections that it had to the Sale Order must have been asserted when that order was being

determined, and Mission must have requested a stay pending appeal to preserve its objections in

light of § 363(m).  When the Sale Order became final because Mission's appeal became

statutorily moot, Mission's claims and interests were limited to "claims under § 365(n)" pursuant

to the carveout in that Order.  Sale Ord. ¶ 2.  Applying the doctrine of collateral estoppel, the

Sale Order adjudicated all of Mission's rights with respect to the Agreement and the assets

transferred pursuant to the Asset Purchase Agreement. Mission must have prosecuted all bases

for its objection to the Sale in objecting to entry of the Sale Order.  It had a full and fair

opportunity to litigate in that context and it did so.  Mission cannot now avoid the finality

afforded by the Sale Order by asserting the proposed claims against third parties that have the

benefit of that order.

---

merits in creditors' fraud-based dischargeability action in debtor's Chapter 7 case. *See* 741 F.3d at 77–79; *see also Tadlock v. Marshall Cty. HMA, LLC*, No. CIV-13-655-R, 2015 WL 11236847, *3–4 (W.D. Okla. Aug. 20, 2015) (declining to modify order granting defendant summary judgment on workers' compensation claim and denying plaintiff's motion to reinstate her workers' compensation claim, where the Circuit Court of Appeals affirmed the district court's grant of summary judgment to defendant on the workers' compensation claim based on the plaintiff's waiver of the argument that an email was evidence of consequent termination); *Mid-Continent Cas. Co. v. Petroleum Sols., Inc.*, No. 4:09-0422, 2016 WL 5539895, *34-35 (S.D. Tex. Sept. 29, 2016), *amended*, No. CV 4:09-0422, 2016 WL 7491858 (S.D. Tex. Dec. 30, 2016), *and aff'd in part, rev'd in part and remanded*, 917 F.3d 352 (5th Cir. 2019) (concluding that the legal issue of whether party is bound by waiver in state court litigation could not be resolved as a matter of law on the record before district court because a trial was needed to determine the parties' relationship and the events specifically related to the decision in state court not to seek segregation among the fees claimed by other party not in present litigation).

C.        **Enforcement of the Sale Order**

Purchasers of assets and their assigns rely on the terms of and finality of sale orders. Unlike other types of cases where courts have considered defensive nonmutual collateral estoppel, bankruptcy court sale orders are intended to establish rights among parties who may not participate in the litigation or appeal of orders approving a sale and typically include an injunction protecting purchasers and their successors and assigns from future litigation related to the sale for that purpose.  *See, e.g., In re Whiz Kids Dev., LLC*, 576 B.R. 731, 757 (Bankr. D. Mass. 2017) (observing that the "[t]he Sale Order included specific and definite injunctive provisions to prevent the very type of situation which unfolded" in that case, where purported interest holder in real property sold in the bankruptcy proceeding argued that his ability to foreclose the right of redemption survived the sale, arguments which the court determined failed due to the finality of the Sale Order).  In the Court's experience, the Sale Order in this case was not unique and, like other § 363(f) sale orders, contemplated enforcement against third parties by, among other things, inclusion of an injunction.  Specifically, paragraph 6 of the Sale Order precludes the "assert[ion], prosecut[ion], or [pursuit of] any Liens[, defined as "all liens[,] claims, interests, and encumbrances[,]"] against the Successful Bidder, its property (including, without limitation[,] the Assets), its successors and assigns, or interfere with the Successful Bidder's title to, use, or enjoyment of the Assets, in each case, without first obtaining an order of this Court after notice and a hearing permitting such Lien to proceed."  Sale Ord. ¶¶ 5–6.[20] While technically Mission may be correct that the parties against whom Mission seeks to assert the proposed claims were not parties to the litigation or appeal of the Sale Order, those parties

---

[20] The Asset Purchase Agreement did not otherwise permit such claims. *See* Asset Purchase Agreement Art. II.

(whether specifically known or unknown) were certainly contemplated to have relied on and been afforded the protections of the Sale Order.  There is no dispute that Mission participated in and received due process in connection with the Sale process, as well as an opportunity to object to and appeal the terms of the Sale Order, which unambiguously enjoined persons who held interests in or against the property from asserting those interests against the Assets, S&S, and its successors and assigns.

Given the Sale Order included a specific injunctive provision to prevent the pursuit of the very types of proposed claims asserted here, it may not be necessary to consider the preclusive effects of the Sale Order in terms of nonmutual collateral estoppel.  The same result would be mandated if the Court were to simply enforce the Sale Order.[21]  The proposed claims asserted by Mission would impair the "free and clear" provisions of that order and are barred by the injunction provisions of the Sale Order.

**D.      The "Divestiture Rule" Did Not Limit the Effect of the Sale Order as Entered**

Mission also argues that the Bankruptcy Court did not have jurisdiction to enter the Sale Order if that Order is interpreted to affect its Exclusive Distribution Rights under the Agreement that were the subject of the pending appeal of the 365(n) Order.  Commonly known as the "divestiture rule," filing of a notice of appeal generally "divests the lower court of jurisdiction over those matters on appeal."  *Mission Prod. Holdings, Inc. v. Schleicher & Stebbins Hotels, L.L.C. (In re Old Cold, LLC)*, 602 B.R. 798, 822 (B.A.P. 1st Cir. 2019) *aff'd,* 976 F.3d 107, 116–17 (1st Cir. 2020).  The divestiture rule is a common law "doctrine designed to promote judicial economy and prevent the confusion that would result from two courts addressing the same

---

[21] Although the Sale Order contemplates an enjoined party being able to obtain an order of this Court to proceed with otherwise enjoined claims, the Court does not construe any of Mission's filings as satisfying that provision, and the Court would not exercise its discretion to grant leave to pursue such claims given the finality of the Sale Order and the protections to purchasers afforded by § 363(m). *See* Sale Order ¶ 6.

issue." *Id.*  While the divestiture rule applies to appeals taken from bankruptcy court orders, "[c]ourts have recognized . . . that due to the inherent nature of bankruptcy cases, discrete controversies within the overall case framework may often deserve separate appellate consideration."  *Id.* (internal citations and quotations omitted).  A bankruptcy court is divested of jurisdiction to determine those issues that "so impact the appeal so as to interfere with or effectively circumvent the appeal process."  *Whispering Pines Estates, Inc. v. Flash Island, Inc. (In re Whispering Pines Estates, Inc.)*, 369 B.R. 752, 759 (B.A.P. 1st Cir. 2007); *see also In re Old Cold, LLC*, 602 B.R. at 823.  The mere fact that property at issue in an appeal is the same as the property at issue before the bankruptcy court is not dispositive where the bankruptcy court's resolution of an issue will not interfere with the pending appeal.  *See In re Schultz Mfg. & Fabricating Co.*, 956 F.2d 686, 691 (7th Cir. 1992) (no divestiture where a sale order did not address the issues on appeal and contained an express provision for a return to the status quo if parties succeeded in an appeal); *In re Urban Dev., Ltd.*, 42 B.R. 741, 744 (Bankr. M.D. Fla. 1984) (permitting claim seeking to sell asset free and clear of interests despite pending appeal granting creditor relief from stay to foreclose on property).

Here, the Bankruptcy Court specifically carved out from the Sale Order "claims Mission Product Holdings, Inc. may have pursuant to 11 U.S.C. § 365(n) as determined by a final non-appealable order by a court of competent jurisdiction."  Sale Ord. ¶ 5.  The record is clear that in entering the Sale Order, the Bankruptcy Court's intention was to ensure that it did not interfere with the pending appeal of the 365(n) Order.  As the Bankruptcy Court understood, Mission claimed that its claims arose under § 365(n).  This is consistent with the First Circuit's determination that Mission waived any argument "that rejection under section 365(a), even if allowed, might not extinguish a right to demand specific performance of the negative covenant

32

implicit in the exclusive distribution rights" because it never raised such an argument before the

Bankruptcy Court. *In re Tempnology, LLC,* 879 F.3d at 400. By including the carveout for the

issues in the 365(n) Order that had been appealed, the Bankruptcy Court did not address any

issues then on appeal or interfere with the pending appeal.

**E.     Application of the Sale Order and Collateral Estoppel to the Proposed Amended Claims**

The consequence of the foregoing rulings with respect to the Proposed Amended Claims

is that most of those claims would be subject to dismissal for failure to state a claim, either

because of enforcement of the Sale Order and the injunction prohibiting the prosecution of

claims not otherwise permitted by the Asset Purchase Agreement or the preclusive effect of the

Sale Order and the 365(n) Order. As such, amendment of those claims would be futile.

The Court will address each of the Proposed Amended Claims in turn as set forth in the

Counts set forth in the Proposed Amended Complaint. Count I asserts a claim for "Tortious

Interference with the Agreement" against S&S, Coolcore, and Mr. Stebbins. Am. Compl. ¶¶ 40–

45. This was the sole claim asserted against S&S in the original Complaint. *See* Compl. ¶¶ 26–

31. The Amended Complaint appears to allege tortious interference with the Agreement both

before and after the closing of the Sale. *Id.* Because the Agreement was rejected and all of

Tempnology's rights in and to its assets were sold free and clear of any claims or interests

affecting those assets, Mission's Exclusive Distribution Rights did not survive rejection by

operation of the Sale Order, and no proposed defendant could "procure[] a breach of the

Agreement" after the Sale. Am. Compl. ¶ 43. To the extent that proposed Count I asserts a

claim for post-Sale tortious interference with contract based on violation of exclusivity

provisions, that count fails to state a claim on which relief may be granted and the proposed

amendment would be futile.  As to pre-Sale acts, this is the basis for the original Complaint against S&S.

In proposed Count II, Mission seeks to assert claims against S&S and Coolcore on a theory of successor liability to hold them liable for damages arising from the alleged breach by Tempnology of the Agreement.  Am. Compl. ¶¶ 46–51.  These claims are precluded by the Sale Order.  The Sale Order provides that S&S "shall have no successor or vicarious liabilities of any kind or character" arising from acts or omissions of Tempnology because of the Sale or operation of its business using Tempnology's assets after the Sale.  Sale Ord. ¶ 14.  The Sale Order further authorized and directed the Debtor to convey its assets pursuant to the terms of the Asset Purchase Agreement.  *Id*. at ¶10.  Section 2.3 of the Asset Purchase Agreement provided that "[e]xcept as expressly set forth in this Section 2.3, the Purchaser shall not assume and under no circumstance shall the Purchaser be obligated to pay, perform or discharge, and none of the Acquired Assets shall be or become liable for or subject to, any Liabilities or other obligations of the Seller []." Sale Ord. Ex 1, 14.  Defined in the Preamble of the Asset Purchase Agreement, the "Purchaser" includes S&S's assignees.  *Id*. at Ex. 1, 9.  Mission acknowledges that S&S did not agree to assume any liabilities to Mission in the Asset Purchase Agreement governing the Sale, *see* Am. Compl. ¶ 8, and does not allege that some other exclusion in the Sale Order or the Asset Purchase Agreement would apply.  Mission simply alleges that S&S and Coolcore were a "mere continuation" of Tempnology and are "successors-in-interest" of Tempnology.  *Id*. at ¶¶ 49–51.  The proposed successor liability claims against S&S and Coolcore are precluded by the Sale Order.  Proposed Count II fails to state a claim and, therefore, amendment of the Complaint would be futile.

In proposed Count III, Mission seeks to assert claims against S&S and Coolcore for post-Sale acts that Mission alleges "prevented Mission from enjoying its rights in the [Trademarks] … which survived rejection of the Agreement . . . ."  *Id.* at ¶¶ 53–54.  Given that Mission possessed only a non-exclusive license in the Trademarks, these post-Sale claims are entirely dependent on Mission's claim that its exclusive distribution rights survived the Sale Order and the 365(n) Order.  *Id.* at. ¶¶ 33–39.  As discussed above, notwithstanding how the ruling of the Supreme Court may be applied in other cases, those rights did not survive pursuant to the Sale Order.  Consequently, proposed Count III fails to state a claim and amendment would be futile.

For the same reasons, proposed Count IV fails to state a claim and amendment would be futile.  Proposed Count IV assert claims against S&S and Coolcore for post-Sale acts that Mission alleges intentionally interfered with "precontractual relations" of Mission with potential customers.  *See id.* at ¶¶ 56–60.  Mission alleges that, by entering into agreements with "at least" Disney, Imperial Headware, Brooks, Cabelas and L.L. Bean for products that were subject to Exclusive Distribution Rights under the Agreement, S&S and Coolcore deprived Mission of the ability to obtain the benefits of those agreements.  *Id.* at ¶¶ 57–60.  Again, this proposed claim is fatally dependent on Mission's exclusive distribution rights under the Agreement, which, in this case, were extinguished when the Sale Order and 365(n) Order both became final orders.

## F.  The Statute of Limitations Precludes Pre-Sale Interference Claim Against Mr. Stebbins

The only new claim set out in the Amended Complaint that is not otherwise precluded by the Sale Order or application of the doctrine of collateral estoppel, and thus would not be futile on that basis, is the Count I "Tortious Interference with Contract" claim asserted against Mr. Stebbins for pre-Sale acts.  This proposed claim, however, is barred by N.H. Rev. Stat. Ann. § 508:4(I) as having been brought outside of the three-year limitations period for personal actions.

Under that statute, Mission was required to bring its claim against Mr. Stebbins "within 3 years

of the act . . . complained of, except that when the injury and its causal relationship to the act or

omission were not discovered and could not reasonably have been discovered at the time of the

act or omission." N.H. Rev. Stat. Ann. § 508:4(I). The allegations in the Amended Complaint

demonstrate that Mission knew or should have known of the alleged conduct underlying the

proposed new claims against Mr. Stebbins more than three years before the date that Mission

filed Motion. Mission alleges that Mr. Stebbins interfered with its contractual rights under the

Agreement. The Agreement expired, at the latest, by its own terms on July 1, 2016—more than

three years before the Amendment Motion. Am. Compl. ¶¶ 21–26. It is clear from the record

that Mission was well aware of Mr. Stebbins's involvement in both S&S and Tempnology based

on allegations in the Complaint and in pleadings relating to the Sale and other matters filed in the

Chapter 11 case, specifically that Mr. Stebbins controlled S&S and Tempnology at times

relevant to the Complaint.[22] Mission knew of its alleged injury and believed that Mr. Stebbins

had a significant role in causing that alleged injury, as demonstrated by its own recitation of the

facts and injuries alleged in the Complaint.

---

[22] The Complaint alleged numerous facts indicating Mission knew Mr. Stebbins controlled S&S and
Coolcore/Tempnology. *See* Compl. ¶ 9 ("In reality, however, Stebbins, acting for S&S completely
dominates and controls Coolcore's affairs"), ¶ 14 ("In July 2014, Stebbins induced Coolcore to send
Mission a notice purporting to terminate the Agreement with cause. Stebbins did so without obtaining
Management Committee approval"), ¶ 16 ("By inducing Coolcore to terminate the Agreement on
trumped-up grounds, Stebbins needlessly deprived Coolcore of its most important and substantial source
of revenue"), ¶¶ 17-18 ("Stebbins induced Coolcore to enter into agreements with at least two entities to
sell cooling products . . . "[t]hese contracts plainly violate the Exclusivity Provisions and interfere with
Mission's rights under the Agreement"), ¶ 19 ("After Stebbins induced Coolcore to purport to terminate
the Agreement with Cause, Mission made significant efforts to convince Coolcore that its termination
efforts were unavailing and the Agreement remained in full force and effect. Vindictive and unyielding,
Stebbins refused to allow Coolcore to acknowledge that the Agreement remained in effect and instead
induced Coolcore to engage in a long and expensive arbitration"), ¶ 23 ("Stebbins then induced Coolcore
to commence a bad-faith bankruptcy proceeding").

Mission argues that the statute of limitations should be tolled. *See* Mission Reply ¶¶ 20–22. These arguments are primarily directed at the post-Sale claims that are precluded by the Sale Order and collateral estoppel as discussed above. Mission argues that stays entered in this Adversary Proceeding to permit prosecution of the appeal of the 365(n) Order limited its ability to assert the Proposed Amended Claims. *Id.* at ¶ 21. As to this claim against Mr. Stebbins, nothing precluded Mission from including him in the Complaint or seeking to add him within the applicable statute of limitations. Equitable tolling of claims "beyond the statute of limitations deadline, is typically available only if the claimant was prevented in some extraordinary way from exercising his or her rights." *Portsmouth Country Club v. Town of Greenland*, 152 N.H. 617, 623 (2001) (quotations omitted). It applies "principally if the plaintiff is actively misled by the defendant about the cause of action." *Id.* This type of extraordinary circumstance is not present in this case.

Mission also contends that it should be allowed to assert claims after expiration of the statute of limitations on a relation-back theory. Mission Reply ¶ 28. Under New Hampshire law, a party generally may not add defendants to the complaint after the statute of limitations has lapsed. N.H. Rev. Stat. Ann. § 514:9 provides that a court may allow amendments "necessary for the prevention of injustice[,] but the rights of third persons shall not be affected thereby." This provision "expressly bars amendments that would affect the rights of third persons," which includes any potential new defendants. *Graham v. Church*, Civil No. 14-cv-171-LM, 2015 WL 247910, *5 (D.N.H. Jan. 20, 2015). Courts have held that a plaintiff may not add a new defendant to a complaint after the statute of limitations has expired, except in the narrow circumstance where an amendment corrects a misnomer and the newly-added defendant had notice of the case. *See Perez v. Pike Indus.*, 153 N.H. 158, 162-63 (2005) (dismissing claims

based on statute of limitations and holding that amended complaint naming new defendant did

not relate back to original complaint in absence of misnomer or mistaken identity); *Lewis v.*

*Hines*, 81 N.H. 24, 26–27 (1923) (affirming denial of motion to add party after the statute of

limitations ran where amendment did not correct a misnomer and nothing in the record showed

that plaintiff intended to sue the potential new defendant); *Isaacs v. Trs. of Dartmouth Coll.*,

Civil No. 17-cv-040-LM, 2017 WL 4857433, at *15–16 (D.N.H. Oct. 24, 2017) (no relation back

where amendment did not seek to remedy a misnomer).  *See also One Beacon Ins. Co. v.*

*Electrolux & Sears Roebuck & Co.*, 223 F.R.D. 21, 24 n.3 (D. Mass. 2004) ("[O]ther than to

correct a misdescription of a party, New Hampshire state law does not allow a substitution of a

new party as a means to avoid the statute of limitations").

   Under Fed. R. Civ. P. 15(c), a plaintiff seeking to add new defendants after the statute of

limitations has expired must meet the requirements of the relation back provision under Fed. R.

Civ. P. 15(c)(1)(C), which incorporates Fed. R. Civ. P. 15(c)(1)(B).  Pursuant to Fed. R. Civ. P.

15(c)(1)(B), the proposed amendment must assert a claim that arose out of the same transaction,

conduct, or occurrence as those set forth in the original pleading.  *See* Fed. R. Civ. P.

15(c)(1)(B).  In addition, a plaintiff must show that, within the time allowed for service under

Rule 4(m), the newly named defendant (1) "received such notice of the action that it will not be

prejudiced in defending on the merits" and (2) "knew or should have known that the action

would have been brought against it, but for a mistake concerning the proper party's identity."

Fed. R. Civ. P. 15(c)(1)(C); *see also Krupski*, 560 U.S. at 545.  To demonstrate that a defendant

knew that the action would have been brought against it "but for a mistake concerning the proper

party's identity," a plaintiff, as a threshold matter, must show that it, in fact, did make a mistake

of identity.  *See Ferreira v. Marriott Int'l Hotels, Inc.*, 504 F. Supp. 35, 38–39 (D.R.I. 2020)

(quoting *Wilson v. United States Gov't*, 23 F.3d 559, 563 (1st Cir. 1994)) (emphasizing that an amendment to change a defendants name under Fed. R. Civ. P. 15(c)(1)(C) should be used only when a plaintiff has made a mistake of the defendant's identity or has misnamed a defendant, not when the plaintiff has lacked knowledge itself of the correct party); *Morales v. Rivera*, 217 F. Supp. 3d 464, 469 (D.P.R. 2016) (concluding that complaint did not relate back to original pleading because "[t]here was no issue of mistaken identity with Plaintiff's federal complaint"); *General Linen Serv., Inc. v. General Linen Serv. Co.*, Civil No. 12-cv-111-LM, 2015 WL 471011, *3 (D.N.H. Feb. 4, 2015) ("The problem is that [the plaintiff] has not identified a mistake concerning the individuals' identities of the kind that is cognizable under Rule 15(c)(1)(C)(ii)").  The Supreme Court has held that claims may not relate back under Rule 15 when a plaintiff has made "a deliberate choice to sue one party instead of another while fully understanding the factual and legal differences between the two parties," because such a choice "is the antithesis of making a mistake concerning the proper party's identity."  *Krupski*, 560 U.S. at 545.

Here, the pre-Sale claims asserted against Mr. Stebbins do not relate back under either the federal or New Hampshire standard.  The omission of Mr. Stebbins from the original complaint is not the result of mistaken identity or misnomer.  As set out in Mission's Amended Complaint, prior to filing the original Complaint Mission brought an arbitration against the Debtor in which Mission alleged that Mr. Stebbins "controlled" Tempnology, "induced Tempnology to purport to terminate the Agreement," and was intransigent during negotiations between the Debtor and Mission.  *See* Am. Compl. ¶¶ 18, 25–26.  The Complaint contained nearly 6 pages of alleged bad actions by Mr. Stebbins in causing and perpetuating the dispute between Mission and

Tempnology, and that Complaint was signed on November 17, 2015.[23]  The record demonstrates that Mission's failure to name Mr. Stebbins in the original Complaint prior to expiration of the statute of limitations was not the result of mistaken identity or misnomer, as Mission had acute and specific knowledge of Mr. Stebbins's alleged bad actions giving rise to the claims.  It is reasonable to infer that that was a strategic, or at least deliberate, choice.  As such, the proposed claims against Mr. Stebbins do not relate back and are outside the statute of limitations and amendment would be futile for that reason.

## VI.  CONCLUSION

For the reasons stated above, the Motion is DENIED.


Date: August 6, 2021                                   /s/ Christopher J. Panos
                                                       Christopher J. Panos
                                                       United States Bankruptcy Judge
                                                       District of New Hampshire (by designation)

---

[23] *See supra* at 36 n.22; *see also* Notice of Removal 20–32.